IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONALD A. DECHOW,

      Plaintiff,

v.                                      CASE NO. 1:13-cv-239-MP-GRJ

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT & RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Title II Disability Insurance Benefits pursuant to 42 U.S.C. § 405 et seq.  (Doc. 1.)   The Commissioner has answered, (Doc. 9) and both parties have filed briefs outlining their respective positions.  (Docs. 12, 13.)  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed a Title II application for disability and disability benefits on November 8, 2010, claiming disability beginning December 24, 2008.  (R. 22.)   The claim was denied on December 30, 2010 and again upon reconsideration on April 13, 2011. Id.  Plaintiff requested a hearing on May 16, 2011, and the ALJ held a video hearing in Gainesville, Florida on April 5, 2012.  Id.

The ALJ issued a written decision, dated April 26, 2012, finding Plaintiff not

disabled. (R. 32.)  Plaintiff requested review of the ALJ's decision by the Appeals

Council, and on October 9, 2013, the Appeals Council denied Plaintiff's request for

review. Plaintiff filed the complaint in this Court on November 25, 2013.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[3] The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.[4]

However, the district court will reverse the Commissioner's decision on plenary review if

the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]  The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant

has a non-exertional impairment which significantly limits his or her basic work skills or

when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A.    Medical Records

Plaintiff's pain first began when he injured his back at work in May of 2008. (R. 451.)  An MRI was performed which evidenced that the L5-S1 segment of Plaintiff's spine herniated, or "slipped," from its original position and may have touched the nearby S1 nerve root, causing pain and discomfort. (R. 361.)  Plaintiff underwent a microdisectomy–the removal of a spinal disc fragments next to a nerve–at L5-S1 on

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

June 23, 2008. (R. 444-446.)  After surgery, Plaintiff participated in physical therapy and showed marked improvement.  (R. 431, 435-436, 439.)  Plaintiff  re-injured his back at work in November 2008. (R. 428.)

Dr. Scott, Plaintiff's treating neurosurgeon, limited Plaintiff to light work directly after his surgery and thereafter. (R. 28, 439.)  On July 23, 2009, Plaintiff underwent a functional capacities evaluation with Debbi Shon, MPT. (R. 396-402.) Ms. Shon determined that Plaintiff had a decreased lumbar spine range of motion, but determined that Plaintiff could perform light work with the limitation of lifting 30 pounds to shoulder height and 25 pounds overhead. (R. 396)

In August 2009, the Plaintiff began pain management treatment with Dr. Wanda Murphy.  (R. 291-293, 471-475.) Dr. Murphy performed nerve conduction and EMG studies, which revealed normal results with no evidence of lumbosacral radiculopathy or peripheral neuropathy. (R. 480.) Dr. Murphy limited Plaintiff to light work and recommended conservative treatment with pharmacotherapy.  (R. 293.) Plaintiff asked Dr. Murphy in December of 2009 for authorization to use a cross-bow for hunting, but Dr. Murphy advised Plaintiff that he should not use a crossbow because a crossbow required more than Plaintiff's 25 pound limit on lifting. (R. 282.)  Plaintiff reported in June of 2010 that his pain was well controlled with his medications and he was employed with the Census Bureau. (R. 271.)  In September 2010, Dr. Murphy recorded unremarkable examination findings. (R. 269-70.)

Plaintiff related to Dr. Murphy that his pain began worsening in December of 2010 for no apparent reason. At that time Plaintiff's gait was normal, Plaintiff had no

problem moving from a seated position to standing and straight leg raising and

Fabrere's tests were negative. (R. 264.)  While Plaintiff's range of motion was guarded,

Plaintiff did not have any problem on extension. *Id.*  Dr. Murphy told Plaintiff that he did

not require a cane to walk and prescribed medication for Plaintiff's pain. (R. 265.)

In January 2011, Dr. Murphy examined Plaintiff and observed evidence of

muscle spasm and tenderness in Plaintiff's LS junction area, but Dr. Murphy's findings

were otherwise unremarkable , including a normal gait and the ability to rise from his

chair without difficulty. (R. 260.) Again Dr. Murphy prescribed medication. (R. 261.) An

MRI of Plaintiff's lumbar spine revealed a shallow left ventral lateral disc protrusion at

L5-S1 and a small area of nonenhancing material posterior to the proximal left S1 root

lying between the shallow disc protrusion. (R. 259.) A February 2011 EMG study

revealed evidence of L0S1 radiculopathy with no evidence of peripheral neuropathy to

the lower left extremity. (R. 256.) In March 2011, Plaintiff underwent an epidural steroid

injection to relieve his pain. (R. 334-35.)

In July 2011, Plaintiff reported that his medications were helpful and caused no

side effects, and he declined to receive another steroid injection. (R. 326.) Plaintiff

appeared comfortable at that time and did not exhibit pain behavior. *Id.*  Plaintiff's gait

was again observed to be normal and Plaintiff was able to rise form a chair without

difficulty. Dr. Murphy again continued Plaintiff on medication. (R. 325-26.)

In January 2012, Plaintiff continued to complain of pain in his lower back, right

buttock and left leg and reported that his pain medication decreased his pain some. (R.

471.) Dr. Murphy's examination findings were unremarkable so she continued Plaintiff

on pain medication. (R. 472.)

During an April 2012 deposition related to Plaintiff's Worker's Compensation claim, Dr. Murphy testified that a March 2009 MRI revealed scar tissue from Plaintiff's surgery had only a mild effect on Plaintiff's S1 nerve root. (R. 482.) Dr. Murphy testified at the deposition that Plaintiff could occasionally lift twenty-five pounds; frequently sit, stand, walk, climb stairs, and use right foot controls; occasionally perform static bending, squatting, kneel, crawl, reach bilaterally above shoulder height, and use right left foot controls; and continuously engage in mental activities. (R. 482.)

Plaintiff underwent a consultative examination by Dr. Lance Chodosh on December 27, 2010. (R. 238-247.)  Plaintiff reported that he lived independently, but performed daily activities more slowly. (R. 243.) Plaintiff said he could walk 80 yards, stand 15 minutes, and sit 25 minutes. *Id.*  Dr. Chodosh found that Plaintiff's motor function and strength were normal in his extremities and diagnosed Plaintiff with chronic low back pain without physical signs of significant impairment. (R. 245.)

In April 2011, Plaintiff underwent a psychological examination with Dr. Diana Benton. (R. 307-311.)  Plaintiff reported a depressed mood, but denied difficulties concentrating. (R. 309.)  Dr. Benton found that Plaintiff had normal mental functions. (R. 310-311.)

Plaintiff also met with Dr. Rick Robinson for work rehabilitation. Plaintiff told Dr. Robinson that his physical problems had increased but that he still mowed his yard with a riding mower and went fishing by boat. (R. 456-470.)

**B.      Hearing Testimony**

At the hearing, Plaintiff testified that he last worked for the Census Bureau between April 27, 2010 and August 17, 2010. (R. 49.)  Before working for the Census Bureau Plaintiff worked as a maintenance tech for a property, and performed duties similar to those of a handyman, including landscaping. (R. 50.)  Plaintiff injured his back in May of 2008 while working as a maintenance tech.  (R. 50-51.)

Plaintiff testified that in his daily life, he cooks simple meals, goes out to eat about five times per month, reads newspapers and magazines, does word searches, uses the computer to look for jobs, goes grocery shopping on a motorized scooter, attends church weekly, visits his parents and friends at least weekly, drives several times a week, and dresses and showers. (R. 52-55.)  He claims that he needs to lay down or recline about four hours out of an eight hour period. (R. 56.)

**C.      Findings of the ALJ**

The ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since December 24, 2008, Plaintiff's onset date. The ALJ found at step two of the sequential evaluation that Plaintiff suffered from disorders of the spine, affective disorder and a history of alcohol abuse in remission. At step three of the sequential evaluation the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing. At step four of the sequential evaluation the ALJ determined that the Plaintiff's RFC was as follows:

"[T]he claimant has the residual functional capacity to perform less than light work as defined in 20 C.F.R. § 404.1567(b).  The claimant is capable of: frequently lifting/carrying 10 pounds frequently; standing or walking six

hours of an eight hour workday; and sitting six hours of an eight hour
workday.  The claimant requires the option to sit or stand.  The claimant
should avoid ladders, unprotected heights, and heavy, moving machinery.
He is limited to occasionally bending, stooping, kneeling, crouching, and
crawling.  The claimant requires a monocane for ambulation and should
avoid the operation of foot controls.  The claimant needs a low stress work
environment with no production line and simple tasks."

(R. 26.)

Based upon this RFC the ALJ concluded that Plaintiff could perform his past

relevant work as a census enumerator. Rather than stopping at step four, however, the

ALJ went on and made an alternative finding at step five of the sequential evaluation.

At step five the ALJ concluded that considering the Plaintiff's age, education, work

experience and residual functional capacity the Plaintiff is able to perform other jobs

that exist in significant numbers in the national economy. Accordingly, the ALJ found

that Plaintiff was not disabled because he could perform his past relevant work or

alternatively that Plaintiff is not disabled because he could perform other jobs that exist

in significant numbers in the national economy.

## IV.  DISCUSSION

Plaintiff raises two issues on appeal.  First, he argues that the ALJ's credibility

finding was boilerplate and did not consider the significance of the combination of

Plaintiff's medical issues in violation of the Eleventh Circuit's pain standard.

Second, Plaintiff contends that the ALJ failed to include the effect of all of the claimant's

impairments in the hypothetical questions posed to the VE.

For the reasons summarized below, the Court concludes that the ALJ did not err

in his credibility determination and the ALJ did not err by failing to include the effect of

all of Plaintiff's impairments in the hypothetical posed to the VE.

## A. The ALJ's determination of credibility was supported by substantial evidence

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.[21]  The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."[22] Under that test, evidence of an underlying medical condition must exist.[23]   If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.[24]  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.[25]

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.[26]   In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and

---

[21]   See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1560–61 (11th Cir.1995).

[22]   See Foote, 67 F.3d at 1560.

[23]   Id.

[24]   Id.

[25]   Id. at 1561.

[26]   20 C.F.R. § 404.1529(c)(1).

his doctors.[27]  The ALJ may consider other factors, such as: (1) the claimant's daily

activities; (2) the location, duration, frequency, and intensity of the claimant's pain or

other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of the claimant's medication; (5) any treatment other

than medication; (6) any measures the claimant used to relieve his pain or symptoms;

and (7) other factors concerning the claimant's functional limitations and restrictions due

to his pain or symptoms.[28]  The ALJ then will examine the claimant's statements

regarding his symptoms in relation to all other evidence, and consider whether there are

any inconsistencies or conflicts between those statements and the record.[29]

         If the ALJ decides not to credit the claimant's testimony as to his subjective

symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the

record must be obvious as to the credibility finding.[30]  While the ALJ does not have to

cite particular phrases or formulations, broad findings that a claimant was incredible

and could work are, alone, insufficient for the Court to conclude that the ALJ considered

the claimant's medical condition as a whole.[31] The ALJ's articulated reasons must also

be supported by substantial evidence.[32]  The Court will not disturb a properly articulated

---

[27] Id. § 404.1529(c)(1)-(2).

[28] Id. § 404.1529(c)(3).

[29] Id. § 404.1529(c)(4).

[30] See Foote, 67 F.3d at 1561–62.

[31] Id. at 1562.

[32] Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991).

credibility finding that is supported by substantial evidence.[33]  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case.[34]

Plaintiff first contends that the ALJ's decision that Plaintiff is only partially credible is meaningless boilerplate that fails to link the ALJ's decision to the evidence provided.  The Court disagrees. Rather, a review of the ALJ's decision discloses that the ALJ clearly articulated his reasoning for only partially crediting the Plaintiff.

The ALJ expressly discussed and relied upon the medical evidence in finding Plaintiff only partially credible.[35]  For example, the ALJ wrote:

> [T]he undersigned gives great weight to Dr. Scott's opinion that the claimant is capable of performing light exertion work.  Dr. Scott is the claimant's treating neurosurgeon, and his opinion is consistent with overall evidence including his treatment records and the claimant's statements regarding his activities of daily living.  In addition, Dr. Scott's opinion for light work is consistent with Dr. Murphy's opinions and treatment records. Physical examinations performed by Dr. Murphy and the consultative examiner, Dr. Chodosh, show relatively minor abnormalities. Furthermore, recent diagnostic imaging showed little change from images after the claimant's surgery.  Finally, vocational evaluator, Dr. Robinson, also agreed that the claimant is able to work in light and sedentary jobs. In reaching the conclusion the claimant is capable of performing a reduced range of light work, the undersigned finds the claimant's testimony regarding the need to use a cane and change positions is credible.  The residual functional capacity has been further reduced to provide for these limitations.

---

[33] Foote, 67 F.3d at 1562.

[34] Id.

[35] See 20 C.F.R. § 404.1529(c)(2).

(R. 29-30.) The ALJ appropriately relied upon the medical opinions of Plaintiff's treating physician, Dr. Scott, the opinion of Dr. Murphy, and the opinion of the vocational evaluator Dr. Robinson, who concluded that Plaintiff could perform light work.  The ALJ discussed and considered the results of the physical examinations, which demonstrated that Plaintiff had few abnormalities.  Lastly, to the extent that the ALJ found that Plaintiff's testimony about his need to use a cane and frequently change positions was credible, he accounted for these limitations in Plaintiff's RFC.

The ALJ also assessed Plaintiff's claims of disabling pain by contrasting Plaintiff's complaints of disabling symptoms to Plaintiff's daily activities.[36]  The ALJ stated:

> The claimant's testimony regarding his need to recline for 4 hours daily is not supported by his activities of daily living, including mowing the lawn, using his boat for fishing, attending church, and working.  Finally, the undersigned finds that the claimant's allegations regarding his inability to work are not credible in light of his work activity for the census and his repeated statements that he is actively looking for work.  The claimant has been actively looking for employment, which evidences a perceived ability to work.  The claimant also registered at the unemployment office and has received benefits.  Receipt of unemployment is inconsistent with a claim for disability because one must certify that he is able to work and actively seeking work to receive those benefits.

(R. 30.)  The ALJ appropriately considered Plaintiff's various outdoor recreational activities, attendance at church and social functions, and active pursuit of employment in concluding that Plaintiff's activities of daily living were inconsistent with Plaintiff's claims of a disabling level of pain.[37]  Accordingly, Plaintiff's testimony describing his

---

[36] 20 C.F.R. § 404.1529(c)(3)(i).

[37] Id.

activities of daily living are directly at odds with Plaintiff's complaints that he is unable to work because of disabling pain and thus fully support the ALJ's credibility analysis.

Thus, contrary to Plaintiff's argument that the ALJ's decision contains meaningless boilerplate that lacks the support of substantial evidence, the ALJ's decision contains sufficient discussion and analysis of the evidence the ALJ considered in determining that Plaintiff's complaints were only partially credible.

Finally, Plaintiff argues that the ALJ's credibility finding violates *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990).  In *Swindle*, the ALJ determined that the claimant's testimony regarding persistent pain and dizziness was only partially credible because she had a full range of motion in her joints, no synovitis, and intact motor function.[38]  The Eleventh Circuit held that the ALJ's finding was not supported by substantial evidence because the medical evidence, "[v]iewed in its entirety," showed that the claimant's systemic lupus and related rheumatic diseases were severe enough to give rise to the disabling symptoms she described.[39] The claimant in *Swindle* had repeated hospitalizations for her lupus symptoms; was consistently treated with medications (including prednisone) for her pain, itching and other symptoms; had numbness in her left leg and foot confirmed by diagnostic testing; and had recurring rash, fatigue, nausea, hair loss, and arthralgia.[40]  The medical evidence in *Swindle* is much different from the medical evidence in this case. Unlike the medical evidence in

---

[38]  *Swindle*, 914 F.2d at 226.

[39]  *Id.* at 225.

[40]  *Id.* at 224.

*Swindle*, the medical evidence in this case reflects that claimant's pain was controlled by medication and was managed to the extent that he could perform light work.  The ALJ also examined Plaintiff's lifestyle when assessing his credibility by considering his activities of fishing, mowing the lawn, attending church, and working for the census.  In short, *Swindle* provides no support for Plaintiff's argument in this case.

**B.**   **The ALJ's decision is supported by substantial evidence and the hypotheticals posed to the VE properly included all of Plaintiff's impairments.**

Plaintiff argues that the ALJ erred by failing to include Plaintiff's chronic pain associated with failed back syndrome and depression in the hypothetical question posed to the VE.  Notably, neither party mentions in their respective briefs that the ALJ first concluded at step four that Plaintiff could perform his past relevant work as census enumerator and then alternatively found at step five that although Plaintiff is able to perform his past relevant work, there are other jobs existing in the national economy that Plaintiff is able to perform. Plaintiff's attack on the hypothetical question is, therefore, relevant only to the ALJ's alternative finding at step five.

At step four, the claimant bears the burden of demonstrating that he cannot return to his past relevant work.[41]  If a claimant's impairments do not prevent him from performing past relevant work, he is not disabled.[42]  While the testimony of a VE is often relevant at step five–after the burden has shifted to the Commissioner to prove that

---

[41] <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1571 (11th Cir. 1990)("The claimant also bears the initial burden of proving that she is unable to perform her previous work.").

[42] 20 C.F.R. § 404.1520(e).

there are jobs that exist in significant numbers in the national economy that an individual with Plaintiff's RFC could perform–there is no requirement for an ALJ to use VE testimony to determine whether a claimant can perform his past relevant work at step four.[43]  A vocational expert's testimony *may* be used at this step, but it is certainly not necessary.[44]  Thus, the proper inquiry at step four is not whether the hypotheticals are complete, but whether the ALJ's finding at step four is supported by substantial evidence.

Assessing the entire record as a whole, the ALJ's determination at step four that the Plaintiff could return to his past relevant work as a census enumerator is supported by substantial evidence.  According to the VE, Plaintiff's past relevant work as a census enumerator, as generally performed, is a light duty position with an SVP of 2. (R. 60.)  As Plaintiff performed it, it was a sedentary, borderline light duty position. (R. 60.)  The ALJ determined that Plaintiff's Residual Functional Capacity ("RFC") included the ability to perform less than light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [C]laimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday.  The claimant requires the option to sit or stand.  The claimant should avoid ladders, unprotected heights, and heavy, moving machinery.  He is limited

---

[43] Hennes v. Comm'r of Soc. Sec. Admin, 130 F. App'x 343, 345-46 (11th Cir. 2005)(quoting 20 C.F.R. § 404.1560(b)(2)); see also Walker v. Comm'r of Soc. Sec., No. 6:07-cv-1647-Orl-18KRS, 2008 WL 5100120, at *6 (M. D. Fla. Dec. 2, 2008).

[44] Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)(concluding "because the ALJ concluded that she [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary").

to occasionally bending, stooping, kneeling, crouching, and crawling.  The claimant requires a monocane for ambulation and should avoid the operation of foot controls.  The claimant needs a low stress work environment with no production line and simple tasks.

These limitations are consistent with the ability to perform the job of a census enumerator as Plaintiff previously performed it. (R. 59-64.)

The ALJ's determination of Plaintiff's RFC is consistent with the medical evidence of record and Plaintiff's testimony at the hearing.  Plaintiff's neurosurgeon, Dr. Scott, limited Plaintiff to light duty work after examination, including lifting up to 20 pounds.  Debbi Shon MPT, who performed a functional capacities evaluation on claimant, opined that Plaintiff could perform light work, including occasional below the waist lifting of 25 pounds.  Dr. Murphy, who was treating Plaintiff for pain management, agreed that Plaintiff should be limited to light work.  The consultative examiner, Dr. Chodosh, opined that Plaintiff had chronic low back pain without physical signs of significant impairment. In short, all of the doctors who examined Plaintiff concluded that Plaintiff could perform some measure of light work. A census enumerator is a light duty position.

With regard to depression, Plaintiff underwent a psychological examination in April, 2011.  The examiner, Dr. Benton, diagnosed claimant with depressive disorder not otherwise specified and alcohol dependence in full sustained remission.  Notably, however, Dr. Benton stated that the Plaintiff had adequate capacity regarding understanding and memory, concentration, persistence, social interaction, and adaptation. Thus, while Plaintiff received a diagnosis of depressive disorder, the

examining doctor did not find that Plaintiff had any significant functional limitations with regard to his mental capacities.

Other evidence of record, including Plaintiff's testimony at the hearing, discloses that Plaintiff is active on a daily basis, including mowing his yard on a riding lawn mower, fishing on a boat, cooking simple meals that do not require standing for very long, going out to eat five times a month, reading, watching television, listening to the radio, doing word search puzzles, reading emails, going to the grocery store three times a month (using a motorized scooter), going to church once a week, visiting with friends several times a week, driving two to three times per week, and dressing, shaving, and showering unassisted.

Accordingly, the Court concludes that Plaintiff has not met his burden of demonstrating that he cannot return to his past relevant work.  Comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past work as a census enumerator, the ALJ correctly found that the Plaintiff would be able to perform the work as he actually performed it and as it is generally performed. The ALJ's step four determination is supported by substantial evidence and, therefore, this is an independent reason to affirm the decision of the Commissioner.

The ALJ in this case made an alternative finding at step five that Plaintiff was not disabled because there were jobs available in the national economy which Plaintiff could perform. Plaintiff's challenge to the hypothetical is relevant here because the ALJ relied upon the testimony of a VE in concluding that there were jobs available in the national economy which Plaintiff could perform.

Generally, at step five, when posing a hypothetical to a VE, the ALJ is required to describe the Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments included in the RFC.[45]  The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  For a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must include all of the claimant's impairments.[46] However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[47]

Plaintiff argues that the hypothetical questions posed to the VE did not account for his chronic pain associated with failed back syndrome and depression. Plaintiff argues that his pain caused him to be off task for a greater amount of time than workers without the same impairment and, therefore, the ALJ should have included in the hypothetical a limitation that allowed the claimant to be off task twelve minutes every hour.

It is well settled the hypotheticals posed to the VE do not have to include findings that the ALJ rejects.  In this case, the ALJ expressly found that Plaintiff did not have any limitations regarding concentration, persistence, or pace such that Plaintiff would be

---

[45] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[46] Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011).

[47] Wright v. Comm'r of Soc. Sec., 327 F. App'x 135, 137 (11th Cir. 2009).

required to be off task twelve minutes every hour.  Indeed, the only reference in the record to any restriction on Plaintiff's ability to focus on work tasks was in the cross examination of the VE by Plaintiff's attorney.  The ALJ properly concluded that Plaintiff was "not mentally precluded from performing work activity." (R. 30.)  The ALJ's determination that Plaintiff did not have any mental functional limitations is fully supported by Dr. Benton's opinion and by claimant's testimony that he is capable of regularly reading and searching for jobs on the computer.  The ALJ also pointed out that the Plaintiff never testified regarding any mental limitations that would impede his ability to work.

Accordingly, because the limitations included in the RFC were amply supported in the evidence and because the additional limitations suggested by Plaintiff were not supported by the evidence— and therefore not included in the RFC—the ALJ committed no error when he did not include them. Thus, the ALJ's alternative finding at step five that there were jobs available in the national economy which Plaintiff could perform constitutes substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 10th  day of February 2015.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**